Good morning ladies and gentlemen. We have six cases on the calendar this morning. Three patent cases of Veterans' Appeal and two employee cases. The latter two will be submitted on the briefs and therefore not argued. Our first case is Pordy v. Land O' Lakes, 05-1548. Mr. Hardy. Thank you, Your Honor. The District Court erred in denying Pordy's post-crime JMOL because in this case the only piece of prior art, Kemp's copyright, simply cannot anticipate as a matter of law. If you consider the claim construction that was affirmed by this Court in the first appeal, it is legally impossible that Kemp's copyright could anticipate Claim 1 of the 670 patent. Why? Because of an important limitation in the claim, that limitation being additional milk solids of 2-12% added to the milk component. Well, that means 8.5% milk solids plus from 2-12%,  seems to me that the allegedly anticipatory item meets those limitations. Your Honor, if you look to the formula, what I think is important for purposes of this appeal is that the facts relating to Kemp's copyright were not a disputed product. No disputed product was made in a relevant time period. What the formulas were, the ingredients, or the amounts, but if you look to that formula that Your Honor just referred to, it's Defendant's Exhibit 323, it's in Appendix 540. The first formula is so-called 214. You'll see there's a column for solids, not fat. That's the milk solids, not fat. And it shows a total there of 8.98, nearly 9%. And Your Honor is right. The claim requires a couple different things. First of all, milk having 8.5% milk solids, and then you add to it an additional 2-12%. Let me interrupt you to emphasize the fact that this is an anticipation, a fact question, a jury verdict. Substantial deference on this issue. I understand, Your Honor, we have a jury, and normally anticipation is a fact question. I agree with you. But I think, as this Court said in the Smith, Klein, Beecham case, there are some exceptions where the facts underlying the inquiry are not in dispute, and it collapses down into a legal question. Much like in the infringement context, where the facts relating to the alleged infringing product or method are not in dispute, infringement becomes a legal question. And I submit that is the case here, because we have the formulas in front of us. There was no dispute. This is the product. It was made during a relevant time period. There was no dispute over how it was made. It's simply an application of this formula to the product. And back to the point that I highlighted, if you look at the total milk solids for Formula 214 and Exhibit 323, it's nearly 9%. The claim says you have to have milk of 8.5% milk solids, and then add at least an additional 2%. Well, simple mathematics tells us that if you satisfy, if Kemp's copyright satisfied the milk limitation of 8.5% milk solids, there's only an additional 0.5% milk solids left. That can never, as a matter of law, get you to the requisite number, the 2-12%. And so on its face, the formula doesn't anticipate, it doesn't fit like a glove, not all the limitations are satisfied. We didn't need a jury to do the arithmetic. But, Mr. Hardy, I have a sneaking suspicion when we hear from the other side he's going to maneuver these numbers around in a way that will be almost equally persuasive, or at least reasonably persuasive. Don't you think that's what's going to happen next? I have no doubt that my opponent is very able, but I submit to you how he is going to maneuver these elements is inconsistent with the language of the claim. Because what he's going to tell you is, well, the way that we satisfy additional milk solids is, first of all, we take one ingredient, fluid skim milk, in the 2-14 PD, and we divide it up into two different quantities. I think the law generally is that when you have a composition claim, you need to consider the entirety of the ingredient. When it's an exact ingredient, dividing it arbitrarily to satisfy a range limitation is improper. The court so held in the generic versus Dillon case, and I apologize if that's not the case in our… And the patent limits what can be used as additional milk solids, right? That is correct, Your Honor. As a matter of fact, column 6 says specific milk solids is not critical. The type of milk solid used, Your Honor, is not critical. In fact, the court held in construing the claim… So why won't they be entirely within their rights to do exactly what you said they shouldn't? In some instances, Your Honor, these ingredients, some of which are listed in the formulas, could constitute additional milk solids, but there are not enough of them. That is the problem. Any way you do the math, you can't add it up to get that 2 to 12 percent. The question is not whether, for example, in formula 214, could the condensed skim milk be additional milk solids. In some instances, it could, but here you have added to it 2,050 pounds of water. What it is in reality is fluid skim milk, and what you're going to hear from my opponent is well, we can just divide up that skim milk arbitrarily. And I'll submit to you, there's language in the claim and the specification that tells us that's not the right approach. The claim says adding additional milk solids to the milk component. And so to give that qualifier to the milk component, meaning it necessarily needs to be something other than just more milk. If I have a glass of milk, of skim milk, half full, and I add some more skim milk to it, I've done nothing to change the character of that product. And the whole purpose, and what the patent teaches, the purpose of adding additional milk solids is to enhance the whitening ability of this coffee creamer so it better simulates half and half. In that formula 214, aren't the additional milk solids 348.08? And the third column from the right, and when you look at the most lower left column, a total of 8758, isn't that 3.97, therefore coming within the 2 to 12 percent range? And if you disagree with that to some extent, doesn't that constitute substantial evidence? Well, Your Honor, you've got the numbers right. When you took the numbers from condensed skim milk, but I'll tell you why I don't think that is substantial evidence. Because it's important to understand that these two formulas, 214 and 214PD, they result in the same product. And if anything is going to anticipate here, it's got to be the product, Kim's Coffee, as it's sold in the store shop. And the evidence was undisputed at trial that these are just two ways of getting to the same thing. And so I submit to you, if 214PD can't anticipate by manipulating the skim milk around, well then necessarily it follows that 214 doesn't fare any better, because at the end of the day, it is the same product. And I get back to, I think it's, I truly believe it is as simple as looking at the total milk solace in this formulation of 214, which is 8.98 percent. How can that ever satisfy milk having 8.5 plus at least an additional 2 to 12 percent? Of milk solids. That number just can't get you there. You can pick and choose, and pick and choose ingredients all day long, and you're never going to get to that requisite amount of additional milk solids. There's even perhaps an easier answer here as to why there aren't enough additional milk solids. Land O'Lakes told us that after the first trial. After they were adjudicated a willful infringer of the 670 patent in post-trial motions, they told the district court, you know what? Kemp's coffee right just doesn't get you there. It doesn't anticipate. It doesn't have enough additional milk solids. And it is at the appendix at page 1882, what's it footnote for? It's a clear, unambiguous statement. Now oftentimes this happens in these cases, you get a new set of lawyers and a new set of expert reports, and usually the statement that was made right after the first trial is particularly probative here, and that is where Land O'Lakes said that unlike other formulations, they did not have, unlike the Baker reference, which they relied on heavily in the first trial, they didn't have enough additional milk solids with Kemp's coffee right. That has not changed. Nothing has been done to change that except new theories, and these theories don't fly with the total milk solids number, which is 9%, and you can never manipulate that claim to get both milk with 8.5% plus at least another 2% of additional milk solids. Now, going back to Your Honor's earlier question about well didn't we have a jury here? That's right, we had a jury. But in terms of the two theories that were recounted by the defense ant for anticipation, there were no facts regarding those. The first is this dividing of milk. There was no dispute about what Land O'Lakes and his expert Dr. Metzger did. They took the fluid skim milk and divided it into a one-third volume and two-third volumes and said we'll call two-thirds of it the milk component, we'll take the other one-third of it out, we'll mix it with some stuff, and add it back in. It's a strangely drafted claim, a composition claim. Exactly, Your Honor. And so if it has this, has A and B and additional A, then the A and the additional A are A. And in fact, it looks as though you don't accept that. It looks as though both limitations have been met. Well, Your Honor, I agree it is a composition claim and that is important because it is the composition that we're talking about, not the limitations. The milk having approximately 8.5% milk solids is a separate and distinct limitation from 2-12% by weight of additional milk solids. And going back to the formula, this formula, 323, was never disputed. This was accepted as true for purposes of the trial. This is how the product was made. Look at both of them. 214 on page 540, it has 8.98% milk solids. 214 PD, which is essentially the exact same formulation, has 9%. And again, I submit it's a simple matter of arithmetic. How can you ever satisfy both 8.5% milk solids and another 2? You can't do that. I mean, I think you need to have at least 10.5% milk solids and these all tank out and so I don't think we need a jury to answer that question. Now, because again, I think we fall into the line of cases much like Smith-Kline-Hugin that normally, yes, anticipation is a fact question, but not where those facts underline the inquiry or dispute. Mr. Hardy, I think you've milked this argument for all it's worth. Do you want to reserve judgment? I reserve judgment. Mr. Devaney, before you begin, and this is on our time, not yours, you've noticed conditional cross-appeal, but we don't think it's a proper cross-appeal because it advances arguments supporting the judgment below. It would lead to affirmance of the same judgment of invalidity. So we're not going to consider that a proper cross-appeal. You can raise the same points in your argument here, but arrange your time without expecting that you'll have a second argument. All right. Thank you, Your Honor. May it please the Court of Counsel, I will confine my argument here to the additional note-solid argument that I've heard from Mr. Hardy. What Mr. Hardy really is attempting to do in his argument, Your Honor, is add a new claim limitation to Claim 1. He wants Claim 1 to read as though it requires that the composition, the final composition, have at least 10.5 percent milk solids, the 8.5 percent from the first ingredient, and another 2 percent from the second ingredient. You don't read the claim that way? No, Your Honor, I don't read the claim that way, and neither did the plaintiff in this case below the first trial, because in the first trial, the product that was found to contain 7.7 percent milk solids in the total composition, and this is one of the difficulties that Dr. Hardy faced at trial when he was put a hypothetical question where he had to testify that a composition that had 7.7 percent milk solids in total would  Claim 1, but this composition with 8.98 or 9.0 percent milk solids did not, and that's the fundamental fallacy with Dr. Hardy's argument.  go back to Dr. Hardy's position. With respect to that formula at appendix page 540, Your Honor, Mr. Hardy concedes this morning, as he does, I think, in his brief, that there's no question that this is the formula that Kemp's Coffee Right was made from back at the relevant time frame. Mr. Hardy does not challenge that these formulas were in fact in place to prepare the Kemp's Coffee Right formula, and all he can say about that condensed skim milk component is that if you add water to it, it becomes fluid skim milk. That was not the testimony below. They tried that with Mr. Hood, who was the guy who actually made this in the plan for Kemp's, and he testified that if you take all that out, you don't have fluid skim milk because then you have 11 percent milk solids and not the 8.5 percent that's described in the first element of the plan. The testimony below, Your Honor, was that the calculation that you performed was done twice for the jury, once by Mr. Hood, once by our expert, Dr. Metzger, that condensed skim milk in the formula contributed an additional 3.97 percent additional milk solids to the formula. Condensed skim milk is precisely the nature of the additional skim, the additional milk solids that the patent specification described in column 6, where it talks about no need for specific material, but a natural all-dairy material is preferred, and nothing is more natural or more all-dairy than condensed skim milk. As a result of that, Your Honor, the jury had ample evidence below from which it could conclude, and obviously did, that formula 214 anticipated the claim because it met all of the claim elements. The testimony below was that the other formula on the page, 214 PD, got almost exactly to the same total composition simply by substituting for that condensed skim milk some portion of fluid skim milk and then dry milk powder. Also, that's the way it was made in the plan and also satisfying that claim limitation. Was the jury given a general verdict or did they make specific findings? It was given one question, Your Honor, which was, was there a product in the relevant time frame which anticipated the claim? The answer is yes. Mr. Hardy, his argument also made the point that Landa Lakes admitted after the first trial that the Kemp's Coffee Right product did not anticipate. That's an overstatement of the record. What he cited to or I think intended to was page 1889 of the appendix where in the first full paragraph on this time referring to a formula 214 PD but there's no admission that the Kemp's Coffee Right formula did not anticipate the claim. On the contrary, the very next sentence says that from the viewpoint of the claim to the 670 patent, Kemp's Coffee Right and Fat Free Half and Half are identical. No reasonable jury could find that any claim reading on Fat Free Half and Half was not anticipated or obvious over Kemp's Coffee Right. So that's not the admission that Mr. Hardy would like it to be. Your Honors, the jury below had testimony from lots of different sources in this case. It had testimony from a Landa Lakes representative who got this Coffee Right product at the time. It had evidence from a Mr. Blumkey whom Landa Lakes contracted with to make our ultimate product who also had access to the Kemp's Coffee Right product at the time. It had evidence from Scott Hood, the guy who actually made this product at the time. It had evidence from our expert Dr. Metzger who carefully meticulously walked the jury through each one of the claim elements with these formulas in front of them and testified that all of the claim limitations were met. Dr. Hardy didn't put on any testimony other than his own testimony concerning this additional milk solidification from which the jury could have reached a conclusion opposite than the one it did. This case was fairly tried to a jury. The jury reached this verdict. That verdict should be affirmed. That's all I have. Thank you, Mr. Levine. Mr. Hardy has a few comments. Mr. Levine said that I'd like to insert another limitation claim regarding total milk solids. I think it's just a necessary consequence when you have two separate limitations. You do not duplicate those and therefore the necessary fact you must have at least the 10.5 percent of total milk solids. Claim 1 already has a separate limitation of total solids of 11 to 28 percent. Regarding the skim milk and whether or not that can constitute additional milk solids, it is important again to remember that these two formulas produce the same